IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES L. LEVENTRY,                    )
                                      )
              Plaintiff,              )
                                      )
      v.                              )
                                      )  Civil Action No. 08-85J
MICHAEL J. ASTRUE,                    )
COMMISSIONER OF                       )
SOCIAL SECURITY,                      )
                                      )
              Defendant.              )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this $22^{\gamma}$ day of September, 2009, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 11)[1] be, and the same hereby is, granted, and the Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, denied. The case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

---

[1] Plaintiff, who is a pro se litigant, filed a Brief in Support of Motion for Summary Judgment (Document No. 11) ("plaintiff's Brief"), but failed to file a motion for summary judgment itself. The court is mindful of its obligation to liberally construe a pro se plaintiff's pleadings and submissions, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), thus we consider plaintiff's Brief, which includes factual averments and legal argument, to include his summary judgment motion as well.

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000), quoting, Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003), quoting, Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979). These well-established principles dictate that the court remand this case to the Commissioner for further proceedings consistent with this Memorandum Judgment Order.

Plaintiff filed his application for SSI on May 16, 2005, alleging disability beginning July 22, 2001, due to spine problems, arthritis and possible lupus. Plaintiff subsequently alleged that he had high blood pressure and hand pain.

%AO 72
(Rev 8/82)

Plaintiff's application was denied.

At plaintiff's request, an ALJ held a hearing on February 9, 2007, at which plaintiff, who was unrepresented, his wife and a vocational expert appeared and testified. At the hearing, the ALJ informed plaintiff of his right to representation, advised plaintiff of the advantages of representation, and indicated the hearing could be postponed if plaintiff wished to obtain a representative. (R. 42-44). Plaintiff stated that he understood his right to representation, but elected to proceed without a representative. (R. 43-44).

On May 25, 2007, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 54 years old at the time of the ALJ's decision and is classified as a person closely approaching advanced age under the regulations. 20 C.F.R. §416.963(d). Plaintiff has a ninth-grade education. Plaintiff has past relevant work experience as a roofer, iron worker, construction carpenter and tile setter, but he has not engaged in substantial gainful activity at any time since he filed his application for SSI.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar

spine and chronic pain syndrome.   The ALJ determined, however, that plaintiff's impairments, either alone or in combination, did not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ also found that plaintiff retains the residual functional capacity to perform a range of medium work with a number of other limitations.   Plaintiff requires work that involves only occasional balancing, stooping, kneeling, crouching, crawling and climbing and only occasional overhead work and head movements.   In addition, plaintiff is limited to work that involves simple, routine, repetitive tasks that are not performed in a fast-paced production environment, as well as work that involves simple work-related decisions and relatively few work-place changes (collectively, the "RFC Finding").

Based upon testimony by a vocational expert at the hearing, the ALJ concluded that plaintiff could not perform his past work, but his vocational factors and residual functional capacity permitted him to make an adjustment to other work that exists in significant numbers in the national economy, such as a mold filler and a box bender.   Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months.   42 U.S.C. §1382c(a)(3)(A).   The

%AO 72
(Rev. 8/82)

impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations that incorporate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ is biased against pro se claimants and that she did not fully develop the record or afford him a fair hearing. See plaintiff's Brief, ¶¶4, 9, 12, 13, 20. Plaintiff also argues that the ALJ erred at step 2 of the sequential evaluation process by finding that his pulmonary impairment, depression and anxiety are not severe impairments. Id., ¶¶19, 22. Plaintiff further argues that the ALJ's decision is not supported by substantial evidence at step 5 because the ALJ

did not properly evaluate his residual functional capacity, consider his treating physician's opinions or evaluate his credibility. Id., ¶¶3, 11, 14, 16, 17. As explained herein, the court finds that plaintiff's bias argument is unfounded and that his step 2 severity argument lacks merit. However, the court agrees with plaintiff's argument at step 5 that the ALJ failed to consider the evaluation and opinion of plaintiff's treating physician, Dr. Leo O'Connor. Accordingly, for the reasons stated herein, this case must be remanded for additional consideration at step 5.

Plaintiff first argues that the ALJ generally is biased against pro se social security claimants and that she did not fully develop the record or afford plaintiff a fair hearing. See plaintiff's Brief, ¶¶12, 20. More specifically, plaintiff contends that the ALJ denied him a continuance, rushed through the hearing and failed to obtain relevant medical records. Id., ¶¶ 4, 9, 13. Each of plaintiff's claims are unfounded.

Due process requires that social security claimants be afforded a full and fair hearing. Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). Essential to a fair social security hearing is the right to an unbiased judge who fulfills her duty to develop a full and fair record. Id. The ALJ's duty to develop a full and fair record is heightened in cases where a claimant is unrepresented. Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980); Dobrowolsky, 606 F.2d at 407. In fulfilling the duty to help a pro se claimant develop the record, an ALJ must

scrupulously and conscientiously probe into, inquire of and explore for all the relevant facts. Reefer, 326 F.3d at 380.

An ALJ is presumed to be unbiased unless there is a specific showing for cause to disqualify. Schweiker v. McClure, 456 U.S. 188, 195 (1982). The burden to establish a disqualifying interest rests with the party asserting bias. Id. at 196. A party asserting bias must show that the behavior of the ALJ was "so extreme as to display clear inability to render fair judgment." Liteky v. United States, 510 U.S. 540, 551 (1994).

First, with respect to plaintiff's bias claim, the transcript of the administrative hearing makes clear that the ALJ was not biased against him. Plaintiff has not identified any behavior by the ALJ in this case that prevented him from receiving a full and fair hearing or that indicated the ALJ was unable to render a fair judgment. Although plaintiff contends that the ALJ denied him a continuance and rushed through the hearing, see plaintiff's Brief, ¶¶9, 13, these claims are not true. To the contrary, the ALJ advised plaintiff of his right to representation and indicated the hearing could be postponed if plaintiff wished to obtain a representative, but plaintiff indicated he understood his right and wanted to proceed with the hearing without representation. (R. 42-44). Further, contrary to plaintiff's assertion that the ALJ rushed through the hearing, the transcript indicates that the ALJ extensively questioned plaintiff about his impairments, symptoms, medications and treatment, activities and functional limitations. (R. 59-85, 87-88). Moreover, there is no indication

in the hearing transcript that the ALJ questioned plaintiff in a coercive manner, that she interfered with the introduction of evidence concerning plaintiff's claim, or that she made any comments that show she was biased against pro se claimants generally or plaintiff in particular.

Further, the record makes clear that the ALJ satisfied her heightened duty to plaintiff, as an unrepresented claimant, to develop a full and fair record. As already discussed, the ALJ extensively questioned plaintiff on all matters relevant to his claim. Before plaintiff concluded his testimony, the ALJ invited him to elaborate on any other points that he believed were relevant when she asked, "[i]s there anything else that I have not asked you that you think that I should know to consider in determining whether or not you're disabled?". (R. 86). In addition, the hearing transcript plainly contradicts plaintiff's contention that the ALJ failed to obtain relevant medical records. See plaintiff's Brief, ¶4. Indeed, twelve pages of the hearing transcript describe the ALJ's efforts to obtain information from plaintiff concerning medical sources who may have had relevant medical evidence. (R. 44-55). As a result of the ALJ's careful inquiry, additional records were produced by plaintiff and his treatment providers. (R. 322-403).

In sum, the ALJ extensively questioned plaintiff at the hearing in order to elicit any information that was relevant to his claim, and the ALJ obtained all of plaintiff's pertinent medical records. Accordingly, the ALJ fully and fairly developed

the record in this case, and plaintiff's contention to the contrary lacks merit.

Plaintiff next argues that the ALJ erred in finding that his pulmonary impairment, depression and anxiety are not severe impairments. The "severity regulation" applied at step 2 requires that the claimant have a severe impairment, or combination of impairments, which significantly limits his physical or mental ability to perform basic work activities.[2]   20 C.F.R. §416.920(c). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step 2 severity determination in terms of what is "not severe." <u>Newell v. Commissioner of Social Security</u>, 347 F.3d 541, 546 (3d Cir. 2003) (<u>citing</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996)). According to the Regulations, an impairment "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §416.921(a). Social Security Ruling 85-28 clarifies that an impairment can be found "not severe" only if the evidence establishes a slight abnormality which has no more than a minimal effect on an individual's ability to work.

---

[2]Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§416.921(b)(1)-(6).

Although the principles discussed above indicate that the burden on an applicant at step 2 is not an exacting one, plaintiff nonetheless bears the burden to prove that his alleged pulmonary impairment, depression and anxiety are severe impairments. 20 C.F.R. §416.912(c); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (stating that the claimant bears the burden of proof at step 2 of the sequential evaluation process). Plaintiff has not met that burden in this case, as he has not proffered evidence to indicate that his pulmonary impairment, depression and anxiety present more than a minimal impact on his ability to perform basic work activities.

First, plaintiff did not allege that he is disabled based on a pulmonary impairment, and he has not identified any evidence in the record to establish the nature of his alleged pulmonary impairment, let alone that it is severe. With respect to plaintiff's depression and anxiety, the ALJ's decision contains an extensive analysis explaining why those impairments are not severe. (R. 28-30). The ALJ's analysis is supported by the opinion of plaintiff's treating psychiatrist, Dr. Cassone, who found that plaintiff had, at most, only slight limitations in his ability to perform certain work-related functions, and no restrictions in his ability to interact with others in a work-setting and to respond to work pressures and work changes. (R. 318). Dr. Cassone observed that plaintiff's "limitations are mostly physical." (R. 318). For all of these reasons, the ALJ properly concluded that plaintiff's alleged pulmonary impairment,

%AO 72
(Rev. 8/82)

depression and anxiety are not severe impairments.

Plaintiff next challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5, the Commissioner must show that there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with his age, education, past work experience and residual functional capacity. 20 C.F.R. §416.920(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §416.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ considers the claimant's ability to meet the physical, mental and other sensory requirements of work. 20 C.F.R. §416.945(a)(4).

Here, plaintiff argues that the ALJ erred at step 5 because: (1) the ALJ did not properly consider certain medical opinions; (2) the RFC Finding is not supported by substantial evidence; and (3) the ALJ did not properly evaluate his credibility. The court finds that the ALJ erred by failing to consider the opinion of plaintiff's treating physician, Dr. Leo O'Connor.[3]

The record contains two reports from Dr. O'Connor. Dr. O'Connor stated in August 2003 that plaintiff "needs assessment

---

[3]Plaintiff's argument that the ALJ failed to consider medical evidence from some of his other treatment providers, such as Drs. Wheeling and Brunelli, lacks merit. Drs. Wheeling and Brunelli examined plaintiff in the early 1990s, well before plaintiff's alleged onset of disability in 2001 and the filing of his SSI application in 2005. Accordingly, the ALJ did not err in failing to discuss that evidence.

from the Bureau of Vocational Rehabilitation and ongoing aggressive medical treatment." (R. 288). In February 2007, Dr. O'Connor stated, "I do not think [plaintiff] could hold a job due to all of the above", referring to plaintiff's medical history and conditions that he had cited in his report. (R. 278-79). Contrary to the Regulations, the ALJ failed to discuss in her decision Dr. O'Connor's evaluation of plaintiff in his two reports and his opinion that plaintiff cannot work, or to state the amount of weight, if any, that she would attribute to his evaluation and opinion. See 20 C.F.R. §416.927(d)(2) (stating, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"). The ALJ's failure to discuss the evaluation and opinion of plaintiff's treating physician, or to indicate what, if any, weight should be accorded to his opinion, clearly violates Social Security regulations and Third Circuit case law. See S.S.R. 96-2p; Plummer, 186 F.3d at 429. Accordingly, this case must be remanded for additional development by the ALJ at step 5.

On remand, the ALJ shall consider Dr. O'Connor's evaluation of plaintiff and his opinion that plaintiff cannot work. (R. 278-79, 288). The ALJ shall state the amount of weight, if any, that she attributes to Dr. O'Connor's evaluation and opinion and explain the reasons for her decision. If the ALJ determines that Dr. O'Connor's opinion is entitled to substantial or controlling weight, she shall, as necessary, reassess plaintiff's residual functional capacity and reconsider her assessment of plaintiff's

%AO 72
(Rev. 8/82)

credibility in light of any revised findings that she makes regarding Dr. O'Connor's opinion. If the ALJ finds it necessary to revise her RFC Finding and/or assessment of plaintiff's credibility, she shall pose a hypothetical question to the vocational expert that accounts for any such revised findings.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this Memorandum Judgment Order.


Gustave Diamond
United States District Judge


cc:  James L. Leventry
     216 Mabel Street
     Johnstown, PA 15905

     Stephanie L. Haines
     Assistant U.S. Attorney
     319 Washington Street
     Room 224, Penn Traffic Building
     Johnstown, PA 15901